UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MINGTON TEA, <br> PEOPLE INCORPORATED, <br>      Plaintiffs <br><br> Vs. <br><br> COMMONWEALTH OF MASSACHUSETTS, <br> DEPARTMENT OF STATE POLICE, <br> MICHAEL HALLSTEAD, Individually, and <br> JOHN DOE, Individually, <br>      Defendants. | ) C.A. NO. <br> ) <br> ) <br> ) <br> ) <br> ) **COMPLAINT AND** <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) <br> ) <br> ) |

## INTRODUCTION

1. This is an action for damages against the Commonwealth of Massachusetts, The Massachusetts Department of State Police, Michael Hallstead, individually, and John Doe individually, brought pursuant to various causes of actions noted below for injuries resulting from the unlawfully warrantless search and seizure of Mington Tea's person and vehicle on October 1, 2006, and the unlawful warrantless search of a vehicle and private residence owned by People Incorporated on the same date.

## PARTIES

2. Plaintiff, Mington Tea, is an individual, and resides at 205 Fordney Street, City of Fall River, Bristol County, Commonwealth of Massachusetts.

3. Plaintiff, People Incorporated, is a Massachusetts non-profit organization, duly organized in Massachusetts, with a principle place of business at 1040 Eastern Avenue, City of Fall River, Bristol County, Commonwealth of Massachusetts.

4. Defendant, Massachusetts Department of State Place, is a duly organized department of the Defendant Commonwealth of Massachusetts.

5. Defendant, Commonwealth of Massachusetts and/or Massachusetts Department of State Police is the public employer of the defendant Michael Hallstead.

6. Defendant, Trooper Michael Hallstead (hereinafter "Hallstead"), is a State Trooper for the Massachusetts State Police, with a usual place of business at 262 State Road, North Dartmouth, Bristol County, Commonwealth of Massachusetts.

7. Defendant, John Doe, an unidentified individual who is an agent, and/or servant, and/or employee of Defendant Commonwealth of Massachusetts by its Department of State Police who was acting under the control and/or direction of Defendant Hallstead.

8. During all times relevant in this Complaint, the Defendant Hallstead and Defendant John Doe was a duly appointed officer for the Massachusetts State Police Department, acting in his official capacities, acting under color of law, unless otherwise alleged in the Complaint herein.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. § §1983 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as incorporated by the Fourteenth Amendment, as well as the Massachusetts Torts Claim Act, Massachusetts Privacy Statute, and Article 14 of the Massachusetts Declaration of Rights and other causes of action. Jurisdiction is conferred upon this Court under 28 U.S.C. §1331 and §1343(a) (1), (2), (3) and (4).

10. This court has jurisdiction over Plaintiff's state law claims under the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

11. All of the actions, omissions and events complained of take place in the City of Fall River, County of Bristol, Commonwealth of Massachusetts, and within the venue of this Court.

## FACTUAL ALLEGATIONS

12. Plaintiff Mington Tea (hereinafter "Tea") at the time of the alleged incident, worked as a Residential Counselor for Plaintiff People, Incorporated in Fall River, Massachusetts.

13. Plaintiff Mington Tea worked a 9a.m.-11p.m. shift providing support and assistance to physically and mentally challenged elderly individuals at a private residence owned and operated by Plaintiff People, Incorporated, at 145 Spruce Street, Fall River, Massachusetts.

14. On October 1, 2006, Plaintiff Tea left during his shift while on duty and traveled in a People, Incorporated-owned van to Price-Rite, a nearby grocery store, to pick up groceries for the residence.

15. On the way to Price-Rite, Plaintiff Tea traveled in the vicinity of Oak Grove Avenue and New Boston Road, in Fall River, Massachusetts. Plaintiff Tea took a right onto Oak Grove Avenue and realized that he forgot the grocery money.

16. After realizing he forgot the money Plaintiff Tea changed his direction on Oak Grove Avenue.

17. As he changed direction, a Massachusetts State Police vehicle operated by an officer suddenly pulled right in front of him and pulled him over (officer was later identified as Defendant Michael Hallstead).

18. Defendant Hallstead ordered Plaintiff Tea to turn off his vehicle and get out of the car. The officer did not ask the Plaintiff for his driver's license and/or registration, nor did he tell him why he was being pulled over.

19. Defendant Hallstead ordered Mr. Tea to put his hands behind his back. The officer handcuffed Mr. Tea and placed him into the rear seat of the state trooper vehicle and immediately drove to an adjacent Shell gas station.

20. Defendant Hallstead then instructed an unidentified man, John Doe, in an unmarked tan colored car, to take Plaintiff Tea's van and park it on the side of the gas station. Plaintiff Tea remained handcuffed in the state police vehicle with Defendant Hallstead.

21. While in the state trooper's vehicle at the gas station Plaintiff Tea was asked if his name was William Soy.

22. Plaintiff Tea stated no and informed the officer that his name was Ming and that he worked for People Incorporated, which he was on duty, and the van was owned by People Incorporated.

23. Defendant John Doe (the unidentified man) informed Defendant Hallstead that he searched the van and found nothing.

24. Defendant Hallstead exited the vehicle and searched the van that was parked in front of and to the side of his state police vehicle for five minutes.

25. During the initial search Defendant Hallstead shouted, "Where's the shit at?" Finding nothing incriminating the officer stated to Defendant John Doe (the unidentified man) "let's do a double search on him."

26. Defendant Hallstead then escorted Plaintiff Tea into the "Shell" gas station located at the intersection of New Boston Road and Oak Grove Avenue, where Mr. Tea was subsequently searched several times.

27. The initial search of Plaintiff Tea's person was conducted in the middle aisle inside the gas station store.

28. During the search Plaintiff Tea remained handcuffed.

29. Defendant Hallstead unzipped Plaintiff Tea's hooded sweatshirt and pulled it back, and removed his shoes and socks. During the search Defendant Hallstead asked Plaintiff Tea "where's the shit at? don't' play smart with me I'm going to raid your house and car."

30. During the search Defendant Hallstead threatened and intimidated Plaintiff Tea with statements such as "I feel like punching you in the face" and "I want to fuck you up right now". "I am going to your job and search the house." At some point he told Plaintiff Tea that "I have been watching you for a couple of days."

31. During the search Plaintiff Tea again informed Defendant Hallstead that he worked for People Incorporated, that he was working right now and the van belonged to People Inc.

32. Defendant Hallstead asked Mr. Tea where he lived. Mr. Tea stated his address was 205 Fordney Street, in Fall River.

33. Defendant Hallstead asked Plaintiff Tea where his vehicle was, and Plaintiff Tea responded that it was at People Incorporated.

34. Defendant Hallstead put Plaintiff Tea's shoes and socks back on and went to search the van a second time.

35. Defendant Hallstead left the store three to four times repeatedly searching the van and would return to repeatedly searching Plaintiff Tea's person.

36. Finding nothing Defendant Hallstead, accompanied by Defendant John Doe (the unidentified man) brought Plaintiff Tea into the store's bathroom for additional search of Plaintiff Tea's person.

37. During the bathroom search, Defendant Hallstead searched Plaintiff Tea's sweatpants and undershorts. Defendant lifted his t-shirt, checked all his pockets, his sweatpants pockets, then he pulled down his pants to his ankles and searched inside his sweatpants, between his basketball shorts which he was wearing underneath the sweatpants, pulled out his boxers, and searched his genital area with a flashlight.

38. At some point before or after the search Defendant Hallstead told Plaintiff Tea that he has an informant that told him that he was selling crack-cocaine out of the People, Inc. van and the he had been watching him for several weeks.

4

39. Defendant Hallstead left Plaintiff Tea with the Defendant John Doe (the unidentified man). Plaintiff Tea still had his pants down and asked Defendant John Doe (the unidentified man) if he could pull up his pants for him.

40. Defendant John Doe (the unidentified man) stated that if he did anything stupid he would shoot him. Plaintiff Tea noticed that Defendant John Doe (the unidentified man) had a gun when Defendant John Doe (the unidentified man) was pulling up his pants.

41. After the bathroom search Defendant Hallstead searched the van again and escorted Plaintiff Tea to the state police vehicle.

42. Defendant Hallstead asked again where Plaintiff Tea worked and asked if his car was there. Mr. Tea answered in the affirmative.

43. Plaintiff Tea returned to the Defendant Hallstead's police vehicle, still handcuffed during the entire ordeal, and the two headed to People Inc. residence at 145 Spruce Street.

44. Defendant Hallstead searched the Plaintiff's personal vehicle which was parked outside People Incorporated.

45. Defendant Hallstead did not ask Plaintiff Tea for permission to search his personal vehicle and took his keys and searched it. This search was within Plaintiff Tea's view.

46. Defendant Hallstead ravaged through the plaintiff's vehicle so that it looked vandalized.

47. During the search of the vehicle Defendant Hallstead took Plaintiff Tea's license and his cell phone.

48. Defendant Hallstead found nothing incriminating and stated "I am going to get you fired…You can't afford your car…[and] what if I told you I found a 20 piece in your car?"

49. Defendant Hallstead proceeded to Plaintiff People Incorporated residence. The private residence is not open to the public nor is there any sign stating that it's run by People Inc.

50. Two employees, Andrew Warden (hereinafter "Warden") and Alda Medeiros (hereinafter "Medeiros"), and two residents of the home, were present when Defendant Hallstead entered and searched the premises without a search warrant and without permission.

51. According to the employees, Defendant Hallstead, without knocking or announcing his presence, entered the premises through an open back sliding door, without permission.

52. According to Warden, Defendant Hallstead suddenly appeared and asked "how are you doing buddy…where do you sleep? where does the Asian kid keep his stuff?" He also stated, "where does the staff keep their personal items in the house?"

53. Warden asked what the problem was and the Defendant Hallstead replied "one of your staff is the problem"

54. Warden asked Defendant Hallstead to wait by the door until he could call a supervisor, but the officer continued to look around.

55. When Defendant Hallstead was told by Warden to wait by the door because he did not have a warrant and there was no supervisor present, he stated "I don't need a goddam warrant."

56. Alda Medeiros was working in the basement of the residence, between 1:00p.m. and 2:00p.m., on October 1, 2006.

57. Defendant Hallstead accompanied by Warden, stormed into the basement where Medeiros was and began to "tear up" the furniture and everything else.

58. Defendant Hallstead never identified himself.  Medeiros told him that he couldn't be in the house without a warrant and he stated "I can do whatever I want…if these guys have nothing to hide, these guys don't care if we look around."

59. While searching the basement Defendant Hallstead rummaged through a desk, flipped through personal and confidential personal information on the desk, flipped over the couch, and went through storage boxes saying that he was looking for drugs.

60. Medeiros and Warden told Defendant Hallstead to leave at least three times and he refused.

61. When Medeiros instructed Warden to telephone the 24-hour supervisor on-call emergency line, explaining to Defendant Hallstead that it was their emergency line for anything that comes up, Defendant Hallstead left.

62. After the search of the residence, Defendant Hallstead again searched Plaintiff Tea's vehicle, including the trunk.

63. Defendant Hallstead continued to tell Plaintiff Tea "I know you've got something."

64. Defendant Hallstead then drove Plaintiff Tea, still handcuffed in the rear seat, to President Avenue Plaza, in Fall River, Massachusetts.

65. At the Plaza Defendant Hallstead met with a second unidentified man in another unmarked tan colored car, with a state trooper sticker in the rear window.

66. They remained at the Plaza for approximately five minutes.

67. Defendant Hallstead then drove Plaintiff Tea to his vehicle and stated, "take your keys and go home you're going to get fired, I'm calling them right now".

68. As Plaintiff Tea took his keys and approached his vehicle Defendant Hallstead stated "forget it, go back in the house and go to work, I won't say anything".

69. Defendant Hallstead never returned Mr. Tea's cell phone or license.

## COUNT I - FIFTH AMENDMENT
### (Tea Against Hallstead and Doe)

70. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 69 above as if expressly re-written and set forth here.

71. Defendant Hallstead and Defendant Doe violated Plaintiff Tea's guaranteed right of due process under the Fifth Amendment of the United State Constitution when he detained and search Plaintiff Teas as described above.

72. At no time did the defendants provide the plaintiff with information of any accusation against him, allow him to dispute the accusation, or allow him to object to the unreasonable detention and strip search described above.

73. During all times relevant to this action, the defendant Hallstead and Doe exhibited deliberate indifference to the rights of the plaintiff, which caused the violation of the plaintiff's due process rights.

74. Defendant Hallstead and Doe denied plaintiff his due process rights by failing to comply with state police policy for searches.

75. As a proximate cause of Defendant Hallstead and Doe's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a United States citizen, and violation of his body, violation of his civil rights and liberties.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

### COUNT II - 42 U.S.C. § 1983
### and Article 14 of the Massachusetts Declaration of Rights
### (Unlawful search and seizure under Fourth Amendment
### to the United States Constitution)
### (All Plaintiffs Against All Defendants)

76. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 75 above as if expressly re-written and set forth here.

77. The actions of Defendant Hallstead and Doe in their search and seizure of the plaintiff as described herein, violated the plaintiff's right to be free from unreasonable searches and seizure as guaranteed by the Fourth Amendment to the United States Constitution, and Article 14 of the Massachusetts Declaration of Rights.

78. The Department has maintained policies, practices, or customs exhibiting deliberate indifference to the constitutional rights of persons in the State, which caused the violation of Plaintiff's rights.

79. It was the policy, practice, or custom of the Department to inadequately supervise and train its state police officers, including Defendant's Hallstead and Doe thereby failing to adequately discourage further constitutional violations on the part of its state police officers.

80. As a result and proximate cause of the above described policies, practices, or customs, the Plaintiffs were deprived of there rights and privileges secured by the Constitution and laws of the United States and Massachusetts.

81. Defendant Hallstead and Doe did not have probable cause, reasonable suspicion or particularized suspicion that plaintiff had any controlled substance on his person.  Nor did Defendant Hallstead and Doe have any evidence or reasonable suspicion or particularized belief to support the assumption that a strip search of the plaintiff would result in the location of any controlled substances.

82. Defendant Hallstead and Doe did not have probable cause, reasonable suspicion or particularized suspicion that the People, Incorporated residence or vehicle had any controlled substance in it.

83. The deprivation to be free from unreasonable searches and seizures by Defendant Hallstead and Doe, his agents, servants, were objectively unreasonable and reflect a reckless, callous, and deliberate indifference to plaintiff's constitutional rights.

84. The strip search was not reasonable and in proportion to the circumstances. Defendant Hallstead and Doe had no evidence pointing to the plaintiff as a suspect in the possession of a controlled substance, nor did the defendants have any basis to detain and search his person and possession in the store. Defendants had not sought to obtain a search warrant.

85. As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a United States citizen, and violation of his body, violation of his civil rights and liberties.

   Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

### COUNT III – MASSACHUSETTS CIVIL RIGHTS ACT
### (Mass. Gen. Laws c. 12 § 11I)
### (All Plaintiffs against all Defendants)

86. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 85 above as if expressly re-written and set forth here.

87. Plaintiff's exercise of and enjoyment of rights secured by the constitution, laws of the United States and Commonwealth have been interfered with, and/or attempted to be interfered with, by the threats, intimidation, and/or coercion of the defendant Hallstead and Doe, when plaintiff was illegally arrested and detained by the defendants Hallstead and Doe.

88. Said actions of the defendant Hallstead constitute a violation of G.L. c. 12 § 11I.

89. As a proximate cause of the defendant's actions, plaintiffs suffered injuries including but not limited to, vandalism, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a United States citizen, and violation of his body, violation of his civil rights and liberties.

   Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

### COUNT IV – MASSACHUSETTS PRIVACY STATUTE
### (Mass. Gen. Laws c. 214 § 1B)
### (All Plaintiffs against All Defendants)

90. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 89 above as if expressly re-written and set forth here.

91. Through the actions described in this Complaint, Defendant Hallstead and Doe's unlawful search constituted an unreasonable, substantial and serious interference with the privacy of the Plaintiff.

92. As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

### COUNT V – ASSAULT AND BATTERY
### (Tea Against Hallstead and Doe)

93. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 92 above as if expressly re-written and set forth here.

94. Through the actions described in this Complaint, Defendant Hallstead and Doe unlawfully, and without justification or consent, overtly and intentionally placed Plaintiff Tea in apprehension of immediate physical harm, thereby committing the tort of assault against him.

95. Through the actions described in this Complaint, Defendant Hallstead and Doe unlawfully, and without justification or consent, overtly and intentionally offensively and/or harmfully contacted the Plaintiff Tea's person, therefore committing a battery on the Plaintiff.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

## COUNT VI – FALSE IMPRISONMENT
### (Tea Against Hallstead and Doe)

96. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 95 above as if expressly re-written and set forth here.

97. Through the actions described in this Complaint, Defendant Hallstead and Doe unlawfully, and without justification, intentionally restrained Plaintiff Tea's freedom of movement, and therefore falsely imprisoned her, by the imposition of force and/or threats.

98. As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

## COUNT VII – INFLICTION OF EMOTIONAL DISTRESS
### (Tea Against Hallstead and Doe)

99. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 98 above as if expressly re-written and set forth here.

100. The actions of Defendant Hallstead and Doe as described in this Complaint, were extreme, outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

101. Defendant Hallstead and Doe knew, or should have known, that his actions as described in this Complaint would likely cause Plaintiff Tea to suffer emotional distress, and he intended to cause such distress.

102. Plaintiff Tea suffered emotional distress as a result of the actions of Defendant Hallstead and Doe as described in this Complaint.

103. The emotional distress suffered by Plaintiff Tea as a result of the actions of Defendant Hallstead and Doe, as described in this Complaint, was sever and of a nature that no reasonable person could be expected to endure.

104. As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress,

fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

## COUNT VII – TRESPASS
### (Tea and People Inc. Against Hallstead, Individually)

105. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 104 above as if expressly re-written and set forth here.

106. Defendant Hallstead through his actions as described in this Complaint, committed the tort of trespass against the property of Plaintiff Tea by intentionally and wrongfully entering into Plaintiff Tea's vehicle.

107. Defendant Hallstead through his actions as described in this Complaint, committed the tort of trespass against the property of Plaintiff People Incorporated by intentionally and wrongfully entering into Plaintiff People Incorporated's private residence.

108. **As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.**

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

## COUNT IX- NEGLIGENCE
### (All Plaintiffs against all defendants)

109. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 108 above as if expressly re-written and set forth here.

110. Through the actions described in this Complaint, Defendant Hallstead and Doe unreasonably searched Plaintiff Tea's person which was not in conformity to the required standard of care set by law, and therefore was negligent.

111. Through the actions described in this Complaint, Defendant Hallstead unreasonably searched Plaintiff People Incorporated's residence which was not in conformity to the required standard of care set by law, and therefore was negligent.

112. Defendants Commonwealth of Massachusetts and the Department of state Police failed to adequately supervise defendant Hallstead after having knowledge of his prior bad acts.

113. **As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.**

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

### COUNT XI- RECKLESSNESS
### (All Plaintiffs Against Hallstead and John Doe)

114. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 113 above as if expressly re-written and set forth here.

115. Through the actions described in this Complaint, Defendant Hallstead and Doe Recklessly searched Plaintiff Tea's person .

116. Through the actions described in this Complaint, Defendant Hallstead recklessly searched Plaintiff People Incorporated's residence.

117. As a proximate cause of the defendant's actions, plaintiff suffered injuries including but not limited to, humiliation and embarrassment, emotional distress, fear of police authorities, loss of sense of security, dignity and pride as a Massachusetts citizen, and violation of his body, violation of his civil rights and liberties.

Wherefore, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just.

## COUNT XIII – MASSACHUSETTS TORTS CLAIM ACT
### (Mass. Gen. Laws c. 258 § 4)
### (Tea and People, Inc. Against the Commonwealth of Massachusetts and Department of State Police)

118. Plaintiff Tea re-states and re-alleges, and incorporates herein by reference paragraphs 1 through 117 above as if expressly re-written and set forth here.

119. At all times relevant to this Complaint, Defendant Commonwealth of Massachusetts, by its Department of State Police is a public employer within the meaning of Massachusetts General Law Chapter 258, Section 1.

120. At all times relevant to this Complaint, Defendant Hallstead was acting as an employee, agent, and/or servants of Defendant Commonwealth of Massachusetts.

121. Through the actions described in this Complaint, Defendant Hallstead unlawful search constituted an unreasonable, substantial and serious interference with the privacy of the Plaintiff.

122. Through the actions described in this Complaint, Defendant Hallstead unreasonably searched Plaintiff Tea's person which was not in conformity to the required standard of care set by law, and therefore was **negligent and/or reckless**.

123. It was the policy, practice, or custom of the Department to inadequately supervise and train its state police officers, including Defendant's Hallstead and Doe thereby failing to adequately discourage further constitutional violations on the part of its state police officers, therefore was **negligent/and or reckless**.

124. As a result and proximate cause of the above described policies, practices, or customs, the Plaintiffs were deprived of there rights and privileges secured by the Constitution and laws of the United States and Massachusetts.

125. Through the actions described in this Complaint, Defendant Hallstead unreasonably searched Plaintiff People Incorporated's residence which was not in conformity to the required standard of care set by law, and therefore was negligent.

126. Through the actions described in this Complaint, Defendant Hallstead unlawfully, and without justification, intentionally restrained Plaintiff Tea's freedom of movement, and therefore falsely imprisoned him, by the imposition of force and/or threats.

127. Through the actions described in this Complaint, Defendant Hallstead unlawfully, and without justification or consent, overtly and intentionally placed Plaintiff Tea

      in apprehension of immediate physical harm, thereby committing the tort of assault against him.

128. The actions of Defendant Hallstead as described in this Complaint, were extreme, outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

129. Defendant Hallstead knew, or should have known, that his actions as described in this Complaint would likely cause Plaintiff Tea to suffer emotional distress, and he intended to cause such distress.

130. Plaintiff Tea suffered emotional distress as a result of the actions of Defendant Hallstead as described in this Complaint.

131. The emotional distress suffered by Plaintiff Tea as a result of the actions of Defendant Hallstead, as described in this Complaint, was severe and of a nature that no reasonable person could be expected to endure.

132. At all times to this Complaint, Plaintiff Tea enjoyed the right to possession of his vehicle.

133. Defendant Hallstead through his actions as described in this Complaint, committed the tort of trespass against the property of Plaintiff Tea by intentionally and wrongfully entering into Plaintiff Tea's vehicle.

134. At all times to this Complaint, Plaintiff People Incorporated enjoyed the right to possession if their residence located at 145 Spruce Street in Fall River, Massachusetts

135. Defendant Hallstead through his actions as described in this Complaint, committed the tort of trespass against the property of Plaintiff People Incorporated by intentionally and wrongfully entering into Plaintiff People Incorporated's private residence.

136. Pursuant to Massachusetts General Laws Chapter 258, Section 2, Defendant Commonwealth of Massachusetts is liable to the Plaintiff' Tea and Plaintiff People Incorporated for the injuries they suffered as a result of the tortuous acts committed against them by Defendant Hallstead as described in this Complaint.

137. On May 27, 2008, Plaintiff Tea tendered a Notice of Claim as required by Massachusetts General Laws Chapter 258, Section 4.

138. On or about August 22, 2008 the Commonwealth of Massachusetts Executive Office of Public Safety and Security received said letter pursuant to Chapter 258.

15

139. Over 6 months have passed since the Commonwealth of Massachusetts Executive Office of Public Safety and Security received said Chapter 258 letter.

140. The Plaintiffs incorporate all facts from paragraphs 1 through 139 as if stated in each and every cause of action noted above despite what order they so appear.

**WHEREFORE**, the plaintiff request that this honorable court award compensatory damages, punitive damages, costs of litigation, including attorney fees, interest, and any further relief as this honorable court may deem appropriate and just for the above counts.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all counts herein.

          Mington Tea and People Incorporated, Plaintiffs
          By their Attorney,


           /s/ Gary P. Howayeck
          GARY P. HOWAYECK
          209 Bedford St., Suite 402
          Fall River, MA 02720
          Tel.:(508) 676-6666
          Bar: 630053
          E-mail: howayeck@aol.com